ULMAN v. NEWMAN et al.

(Supreme Court, Appellate Division, First Department.   March 13, 1914.)

1. REFORMATION OF INSTRUMENTS (§ 45*)—EVIDENCE—SUFFICIENCY.

In a suit to reform an endowment insurance policy, evidence *held* to show that the policy was taken out wholly for the wife's benefit with intent for her to receive the proceeds, whether her husband lived or died.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 157–193; Dec. Dig. § 45.*]

2. INSURANCE (§ 143*)—RIGHT TO REFORM.

Plaintiff had her husband's life insured, under an agreement that she should pay the premiums, and the policy should be her sole property.   The agent who took the application secured the issuance of an endowment policy, which provided for payment to plaintiff only in case of her husband's death before maturity of the policy.   *Held* that, as there were no intervening rights, plaintiff was entitled to a reformation of the policy, so that the proceeds would come to her regardless of her husband's death or survival, for the issuance of a policy which was different from the one plaintiff desired was a constructive fraud upon her, regardless whether the insurance agent was the agent of plaintiff or the insurer.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 265–272; Dec. Dig. § 143.*]

3. INSURANCE (§ 143*)—GROUNDS FOR REFORMATION—MISTAKE.

TAKE.

Where it was the intention of a husband and wife that an endowment policy applied for by the husband should be payable to the wife at all events and the insurer through mistake made the policy payable to the husband in case he survived until its maturity, a reformation of the instrument will be granted at the suit of the wife.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 265–272; Dec. Dig. § 143.*]

4. LIMITATION OF ACTIONS (§ 96*)—RUNNING OF STATUTE.

A wife took out a 20-year endowment policy on the life of her husband under an agreement that she should pay the premiums and should receive the proceeds.   Through mistake the insurer made the policy payable to the husband in case he survived until its maturity.   The wife did not discover the mistake for over 10 years, but during that time the husband asserted no rights in the policy.   *Held*, that limitations had never begun to run, the policy not having matured, and that the wife was entitled to reformation.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 337, 475, 476; Dec. Dig. § 96.*]

Appeal from Special Term, New York County.

Action by Augustina Ulman against Max H. Newman, as receiver, and others.   From a judgment for plaintiff, defendant receiver appeals.   Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Charles J. Belfer, of Brooklyn, for appellant.
Abraham P. Wilkes, of New York City, for respondent.

HOTCHKISS, J.   The policy is a $5,000, 20-year endowment, dated March 29, 1901.   In case of death it is payable to plaintiff, and in case of Ira's surviving until 1921 it is payable to him.   The judgment ap-

---

pealed from eliminates from the policy the phrases giving Ira an interest therein. The appellant's receivership dates from June, 1911. The action was begun February 26, 1912. The insurance company answered, denying knowledge of the facts on which the claim of reformation was based, and alleged that it was indifferent in the premises. The substance of the court's findings was as follows:

[1] The parties were married in May, 1892. In March, 1901, Rosenberg, an insurance agent, urged plaintiff to have her husband's life insured. Thereupon plaintiff consented, and Ira gave his consent on the understanding that the policy was to be plaintiff's sole property and that she was to pay all the premiums. Plaintiff then instructed Rosenberg to obtain a policy of the general type in question. Rosenberg secured from the insurance company an application blank which he filled out and which Ira signed without reading, and thereupon the policy was issued and handed to Rosenberg, who delivered it to plaintiff, who retained possession of it until possession was surrendered to appellant on his demand. Plaintiff did not examine the policy and was ignorant of its language until such demand. Plaintiff from her separate estate paid all the premiums, aggregating $2,816.55. It was at no time plaintiff's intention to give to Ira, nor was it his intention to acquire, any rights or privileges with respect to the policy, and it was the design and purpose of both that plaintiff should have the sole benefit of its surrender value and endowment features as well as the benefit flowing to her as payee in case of death. ·

I think the findings of fact are supported by the evidence. Having regard for all the circumstances of the parties, my conclusion is that the policy was taken out wholly for the wife's benefit with intent to give her the proceeds whether her husband lived or died. '

It is true there is no finding of fraud in fact or of mutual mistake on the part of plaintiff and the insurance company. Nor do I think this was necessary. The court found that Rosenberg was the agent of the insurance company and ·not of the plaintiff. This finding, although vigorously assailed, I think was justified. Rosenberg was evidently a solicitor of insurance and as such was under a statutory duty to procure a certificate of authority. Laws 1889, c. 282, § 2. He was the medium and the sole medium through which the company's proposal to insure and the plaintiff's "application" for insurance ripened into the contract evidenced by the.policy. But the point is not of determinative importance.

[2] The case may be made to rest on the doctrine of constructive fraud, resulting from Rosenberg's disobedience of plaintiff's directions to apply for a policy the benefits of which would run wholly to plaintiff, who paid the consideration therefor. To entitle plaintiff to relief, it makes little difference whose agent Rosenberg was. If, as the court found, he was defendant's agent, it was constructive fraud for the company to draft the contract in form different from plaintiff's instructions. Hay v. Star Fire Ins. Co., 77 N. Y. 235, 33 Am. Rep. 607; Phœnix Fire Ins. Co. v. Gurnee, 1 Paige, 278, 19 Am. Dec. 431; Weed v. Schenectady Ins. Co., 7 Lans. 452; Goldsmith v. Union Mut. L. Ins. Co., 18 Abb. N. C. 325. If Rosenberg was plaintiff's agent,

the result of his disobedience worked a similar fraud, because, by error and without her consent, plaintiff's property was diverted to a stranger, who paid nothing and has no rights in the premises. If the case were one presenting equities in either the insurance company or plaintiff's husband, the situation would be different; but here no rights are urged in opposition to plaintiff, save such as are set up in her husband's behalf, and he has none. For him, under such circumstances, to be decreed to be the beneficiary of what was agreed should be plaintiff's and for which she alone has paid, but the legal title to which was, by the error of another, put in his name, would be a fraud indeed. In Gillespie v. Moon, 2 Johns. Ch. 585, 599, 7 Am. Dec. 559, one of the earliest cases in this state on the subject of reformation, Chancellor Kent on the authority of English cases said:

"Defects in mortgages, contrary to the intention of the parties, have also been made good against subsequent judgment creditors, who came in under the party, * * * bound in conscience to correct the mistake."

See, also, Gouverneur v. Titus, 6 Paige, 347.

Actual fraud is not necessary, and where, as here, there has been a mistake by one, and where the other party to the contract, being himself indifferent as to who should be the beneficiary of his obligation, has so drawn his promise as to cause it to run in favor of a stranger whom the other party never intended to be benefited, and who on no conceivable ground has any interest in the promise, and who is "bound in conscience to correct the mistake," I think his refusal or failure so to do presents a case of constructive fraud clearly within the principles on which jurisdiction to reform is based.

[3] But from another point of view, the case is clearly brought within the well-established rules for the reformation of written instruments. It has been found as a fact that Ira, plaintiff's husband, intended that the insurance should be wholly for plaintiff's benefit. The application was signed by Ira. In thus signing an application in the form supplied by Rosenberg and in securing a policy different from that agreed, the policy, as between Ira and plaintiff, was the result of mutual mistake, or mistake on plaintiff's part and constructive fraud on the part of Ira. In principle, the case is similar to Haack v. Weicken, 118 N. Y. 67, 23 N. E. 133.

[4] Unless the action is defeated by the statute of limitations, the fact that plaintiff failed for over ten years to discover the error in the provisions of the policy is not of itself sufficient to bar her right to relief. Treadwell v. Clark, 190 N. Y. 51, 82 N. E. 505; Chittenango First Nat. Bank v. Morgan, 73 N. Y. 593; Andrews v. Gillespie, 47 N. Y. 487. In Welles v. Yates, 44 N. Y. 525, reformation of a deed was decreed after a delay of 19 years. In Gillespie v. Moon, 2 Johns. Ch. 585, 7 Am. Dec. 559, the mistake was not discovered for 14 years. In Hay v. Star Fire Ins. Co., supra, Bidwell v. Astor Mutual Trust Co., 16 N. Y. 263, and Anderson v. Met. Life Ins. Co., 18 Wkly. Dig. 192, there was a delay of 8 years, and in Goldsmith v. Union Mut. Life Co., supra, the delay was 10 years. In Avery v. Equitable Life Soc., 117 N. Y. 451, 23 N. E. 3, a delay of 15 years was held to deprive plaintiff of the right to equitable relief; but the circumstances

were such as to clearly distinguish the case from the present. The principles governing laches as grounds for denying equitable relief in cases like the present have been so recently declared by the Court of Appeals that no further discussion on this point is necessary. See Groesbeck v. Morgan, 206 N. Y. 385, 389, 99 N. E. 1046; Pollitz v. Wabash R. R. Co., 207 N. Y. 113, 130, 100 N. E. 721.

The respondent concedes that, if the statute of limitations applies in favor of her husband, the defendant has succeeded to his right to plead it as a defense. Assuming the law to be such, I do not think the statute has run. The policy has not yet matured, and nothing has become payable under it, nor has the husband ever asserted any right to or interest in the policy adverse to plaintiff. Under such circumstances, the statute never began to run, or at least did not begin until this defendant set up a claim to the policy. De Forest v. Walters, 153 N. Y. 229, 240, 47 N. E. 294; Greenly v. Shelmidine, 33 App. Div. 559, 564, 82 N. Y. Supp. 176. Furthermore, inasmuch as the ground for the relief invoked rests on fraud, the statute would not begin to run until the fraud was discovered. Gallup v. Bernd, 1 N. Y. Supp. 478,[1] affirmed 132 N. Y. 370, 30 N. E. 743.

The judgment should be affirmed, with costs. All concur.